# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

SHEILA BRECK,

    Plaintiff,

v.

MARYLAND STATE POLICE,

    Defendant.

Civil Action No. TDC-16-2075

## MEMORANDUM OPINION

Plaintiff Sergeant Sheila Breck ("Sgt. Breck") is a former employee of Defendant Maryland State Police ("MSP"), which she is suing for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2012). Pending before the Court is the MSP's Motion to Dismiss. Having reviewed the pleading and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Sgt. Breck began her career with the MSP in 1991. By 2011, she was a sergeant in the MSP's Prince Frederick Barrack. For the majority of her career, Sgt. Breck received uniformly positive performance reviews. In her capacity as a sergeant, she was required to complete evaluations of her subordinates. Sgt. Breck's subordinates were all men, including Trooper Everett West. In January 2011, Sgt. Breck was approached by the Barrack Commander, Lieutenant ("Lt.") Randolph Stephens, and her immediate supervisor, First Sergeant ("First Sgt.") David Ruel, who "pressured" her to rewrite her evaluations. Compl. ¶ 6, ECF No. 1. Lt.

Stephens and First Sgt. Ruel told Sgt. Breck that she had been harder on her subordinates than her male counterparts had been. Sgt. Breck refused to rewrite her evaluations.

In response to Sgt. Breck's refusal, Lt. Stephens and First Sgt. Ruel began to retaliate against her. Sgt. Breck's requests for leave were rejected while those of male colleagues were granted, and Sgt. Breck was punished for arriving late due to inclement weather when male colleagues were not disciplined for the same infraction. In February 2011, Sgt. Breck complained to Lt. Stephens that she was being mistreated because of her gender and warned him that she was considering filing a complaint with MSP's Fair Practices Office ("FPO"). After this conversation, her supervisors' conduct became openly abusive, including berating her in a manner not used on male colleagues and other forms of "hazing and harassment." *Id.* ¶ 10.

This abusive atmosphere "culminated" in an incident in November 2011. *Id.* While Sgt. Breck was on leave, the deadline passed for the Barrack to submit a report about Driving While Intoxicated incidents. When Sgt. Breck returned to duty, First Sgt. Rule informed her of the missed deadline. Trooper West volunteered to submit the report. After the report was submitted, however, First Sgt. Ruel cited Sgt. Breck for filing a false report because, unbeknownst to her, Trooper West had not been on duty during the reporting period. In January 2012, Sgt. Breck was suspended, formal disciplinary charges were instituted, and she was temporarily reassigned to the Facilities Management Division.

In March 2012, Sgt. Breck filed a complaint with the FPO alleging gender discrimination and harassment. In October 2012, the FPO found her complaint groundless but did not provide its reasons for that determination. That same month, Sgt. Breck's transfer from the Prince Frederick Barrack to the Facilities Management Division was made permanent.

Meanwhile, hearings were held on Sgt. Breck's disciplinary charges in May and June of 2012. In February 2013, Sgt. Breck was informed that the Hearing Board had found her not guilty of four alleged infractions and guilty of one, on the basis that she bore some responsibility for the false report because she was Trooper West's supervisor. The Hearing Board recommended that Sgt. Breck lose some of her leave, that a fine be imposed, that she be transferred, and that she be made ineligible for promotion for an unspecified period. Despite that recommendation, that same month, the MSP Superintendent informed Sgt. Breck that, unless she resigned, she would be terminated in May 2013. For his part in the filing of the false report, Trooper West was docked two days of vacation leave.

Sgt. Breck was not terminated in May 2013, nor did she resign at that point. Instead, over the ensuing three years, she pursued a series of challenges to the results of the February 2013 disciplinary decision. During those three years, Sgt. Breck was passed over for promotion. Meanwhile, on April 19, 2013, Sgt. Breck filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights. In that Charge, she asserted that she had been discriminated against on the basis of sex, that she had been subjected to retaliation, that the discrimination was a continuing action, and that the action had started on January 1, 2011 and continued to February 14, 2013. Although the Charge contained a few additional details about the disciplinary process and recommended sanctions, it largely tracks the allegations she now makes in her Complaint. On March 18, 2016, the EEOC issued Sgt. Breck a right-to-sue letter. On May 1, 2016, Sgt. Breck retired in order to avoid being terminated. As a result of her forced early retirement, she was unable to maximize her retirement benefits, resulting in a loss of $300,000 to $400,000.

## DISCUSSION

On June 14, 2016, Sgt. Breck filed suit in this Court, alleging two causes of action, (1) gender discrimination, in violation of Title VII, 42 U.S.C. § 2000e-2, and (2) retaliation, in violation of Title VII, 42 U.S.C. § 2000e-3. MSP now moves to dismiss one of Sgt. Breck's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and seeks to dismiss her remaining claims under Rule 12(b)(6) for failure to state a claim.

As to subject matter jurisdiction, MSP argues that any constructive discharge claim arising from Sgt. Breck's May 2016 retirement has not been administratively exhausted because Sgt. Breck's EEOC Charge, filed in 2013, makes no reference to that May 2016 retirement. Under the precedent of the United States Court of Appeals for the Fourth Circuit, a failure to exhaust administrative remedies under Title VII should be addressed by way of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).[1] *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009). On a Rule 12(b)(1) motion, a defendant may assert either (1) a facial challenge that the allegations as stated in the complaint are not sufficient to establish subject matter jurisdiction, or (2) a factual challenge that the allegations establishing jurisdiction are not true. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). MSP asserts a factual challenge, arguing that Sgt. Breck did not, in fact, exhaust her administrative remedies.

---

[1] Whether failure to exhaust administrative remedies is always a subject matter jurisdiction question has not been definitively established. The Supreme Court has noted that "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006), and has "cautioned" against "profligate use of the term . . . 'jurisdictional.'" *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 558 U.S. 67, 82 (2009).

Pursuant to Rule 12(b)(6), MSP argues that Sgt. Breck's claims are untimely because the events about which she complains all took place more than 300 days before Sgt. Breck filed her Charge with the EEOC. *See Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002) (holding that the question whether an administrative claim was timely filed with the EEOC is not jurisdictional). Alternatively, MSP argues that Sgt. Breck fails to allege sufficient facts to state a claim for either gender discrimination or retaliation. To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## I. Exhaustion of Administrative Remedies

In its Motion, MSP contends that to the extent Sgt. Breck is asserting that she was constructively discharged when she resigned in May 2016 as a result of alleged gender discrimination and retaliation, she has failed to exhaust those claims with the EEOC. Although Sgt. Breck does not expressly assert a claim for constructive discharge in the Complaint, the language of the Complaint is readily susceptible of such an interpretation, in particular her assertion that she was forced to retire from MSP far earlier than she planned and at the cost of substantial retirement benefits. Moreover, in her Opposition to the Motion, Sgt. Breck characterizes her claims as such. *See* Mem. Supp. Pl.'s Opp'n Mot. Dismiss. ("Opp'n") at 8,

ECF No. 15. The Court therefore construes the Complaint as alleging a claim of constructive discharge based on gender discrimination and retaliation.

Before filing suit under Title VII, a plaintiff is required to file an administrative charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5(f)(1). The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The EEOC Charge must contain allegations "sufficiently precise to identify the parties, and to describe generally the actions or practices complained of." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. §1601.12(b) (2004)). If the claims asserted in a civil action "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Id.* at 509. This exhaustion requirement serves two functions. "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Civil Rights Act's primary goal, the securing of voluntary compliance with the law." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (citation omitted).

An employee is constructively discharged when the employer "deliberately makes [the] employee's working conditions intolerable and thereby forces him to quit his job." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). A constructive discharge claim thus accrues when an employee leaves his or her position. *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016) ("[A]n employee cannot bring a constructive-discharge claim until he is constructively *discharged*."). Here, Sgt. Breck's constructive discharge claim did not accrue until her resignation in May 2016. The EEOC Charge filed in April 2013 therefore necessarily did not allege a constructive discharge in 2016. Moreover, the EEOC investigation into Sgt. Breck's

Charge closed in March 2016, three months before the alleged constructive discharge. The EEOC therefore could not have investigated a claim for constructive discharge as part of its inquiries into Sgt. Breck's 2013 EEOC Charge. *See Chacko*, 429 F.3d at 509. Sgt. Breck's present claim for constructive discharge based on gender discrimination therefore cannot proceed because it has not been exhausted.

However, Sgt. Breck's claim of constructive discharge through retaliation may proceed. The Fourth Circuit has held that a plaintiff raising a claim of retaliation for filing a previous EEOC charge need not exhaust administrative remedies on that claim, but instead may raise it for the first time in federal court. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). The rationale behind this rule stems from two principles: first, the general rule that a Title VII lawsuit may extend to "any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission," and, second, that it is impractical and potentially chilling to expect victims of employment discrimination to file a new EEOC charge for retaliation if they have already been retaliated against for filing the first EEOC charge. *Id.* Construing Sgt. Breck's Complaint in the light most favorable to her, her claim of constructive discharge through retaliation can be keyed to her filing of an EEOC charge, so it did not need to be exhausted.

## II. Limitations Period

Under Rule 12(b)(6), MSP asserts that most, if not all, of Breck's claims are barred because she did not timely file her EEOC Charge. Before filing suit under Title VII, a plaintiff must first file a charge with the EEOC or a "State or local agency with the authority to grant or seek relief" from the discriminatory practice. 42 U.S.C. § 2000e-5(e)(1). A charge filed with a state or local agency must be submitted within 300 days of the unlawful employment practice.

*Id.* The plaintiff cannot recover "for discrete acts of discrimination or retaliation" that occurred outside of the 300-day limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Here, Sgt. Breck filed her EEOC Charge on April 19, 2013. Sgt. Breck therefore may not pursue claims based on discrete acts that occurred before June 23, 2012. MSP asserts that, as a result, the bulk of Sgt. Breck's factual allegations are not actionable, because they involve discrete acts that took place in 2011. Sgt. Breck counters that all of her factual allegations are actionable because together the acts amounted to "the same unlawful practice," and at least one act of alleged discrimination fell within the 300-day period. Opp'n at 6. In particular, she argues that she has alleged in her EEOC Charge that she was subjected to "continuing" discrimination and that she was subjected to a "hostile" work "atmosphere." Mot. Dismiss Ex. A (EEOC Charge) at 3,4, ECF No. 14-3.

Sgt. Breck is correct that for a hostile work environment claim, the factual basis for the claim may stretch back farther than 300 days "so long as an act contributing to that hostile work environment takes place" within the 300 day period. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 105; *see also Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139–41 (4th Cir. 2007). However, this exception to the 300-day limitations period is inapplicable for two reasons. First, Sgt. Breck does not plead a hostile work environment claim in her Complaint. Second, even if the Court were to construe the Complaint as asserting a hostile work environment claim, the allegations supporting such a claim ended more than 300 days before her EEOC Charge.

A work environment is hostile within the meaning of Title VII when it is permeated by harassment that is so "severe or pervasive" that it creates an "abusive working environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Here, Sgt. Breck's allegations

about her daily work environment cover the period from January 2011 to November 2011, the month that, as Sgt. Breck describes it, the abusive atmosphere at the Prince Frederick Barrack "culminated" in the filing of disciplinary charges against her. Compl. ¶ 10. By January 2012, well outside the 300-day limitations period, Sgt. Breck had been transferred out of the Prince Frederick Barrack to another division, about which she makes no allegations of hostility or abuse. Thus, of the allegations that fall within the 300-day period, Sgt. Breck is left only with her challenges to MSP's internal disciplinary process. However, Sgt. Breck nowhere asserts that those challenges themselves pervaded her daily working life, much less that they made her daily working life hostile. The events that fall within the 300-day period, even when read in the light most favorable to Sgt. Breck, do not evince that Sgt. Breck's "workplace was permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The Court must therefore reject Sgt. Breck's effort to cast her gender discrimination and retaliation claims as forms or manifestations of a hostile work environment so as to extend the permissible factual basis for those claims beyond the 300-day limitations period.

The Motion is therefore granted as to claims arising from the events before June 23, 2012. Notably, although events occurring prior to that date cannot form the basis of Sgt. Breck's claims for gender discrimination and retaliation, evidence of those events may be admissible at trial to provide context for understanding the import of later actionable conduct. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

### III. Failure to State a Claim

MSP also seeks dismissal under Rule 12(b)(6) on the grounds that the allegations in the Complaint are insufficient to state claims of gender discrimination or retaliation. As a result of the Court's ruling on the limitations period, the Court evaluates the sufficiency of only those

claims arising on or after June 23, 2012. On an unspecified date in June 2012, about three months after Sgt. Breck filed an internal complaint about the events of 2011, a hearing was held on the November 2011 disciplinary charges. The Hearing Board found Sgt. Breck not guilty of four alleged infractions but guilty of one infraction and recommended as punishment the loss of leave, a fine, a transfer, and temporary ineligibility for promotion. Despite that recommendation, in February 2013, the MSP Superintendent demanded that Sgt. Breck either resign or be terminated, a disciplinary determination that Sgt. Breck then challenged over the next three years, during which she was passed over for promotion. As to the retaliation claim only, the Court considers the additional claim that when Sgt. Breck's appeals of that determination went nowhere, she was forced into retirement.

Based on these allegations, Sgt. Breck adequately pleads retaliation. To state a claim for retaliation under Title VII, the plaintiff must allege facts that, taken as true, establish that (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse employment action against the plaintiff, and (3) "that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). Employees engage in a protected activity when they file formal discrimination complaints or "complain to their superiors" about suspected unlawful discrimination. *Boyer-Liberto*, 786 F.3d at 281 (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003)). Here, Sgt. Breck engaged in the protected activity of filing an internal complaint with the FPO in March 2012. Shortly after, disciplinary hearings were conducted that culminated with the MSP Superintendent threatening what can plausibly be considered disproportionate discipline for Sgt. Breck's role in the filing of a false report. Shoring up that conclusion is the dramatic difference between the Hearing Board's

recommended punishment—loss of leave time, a fine, a temporary pause on promotion, and a transfer to a new division—and the punishment of termination or resignation threatened by the MSP Superintendent. Although the choice put to Sgt. Breck was not a formal personnel action, a retaliation claim may be based on a less formal action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

When Sgt. Breck appealed that determination, and after Sgt. Breck engaged in the additional protected activity of filing a charge with the EEOC in April 2013, her career essentially stalled, as over the next three years she was passed over for a promotion. Accepting Sgt. Breck's allegations as true, she then had no choice in 2016 but to capitulate to the disciplinary options originally imposed in 2013: resign or be fired. Drawing all inferences in Sgt. Breck's favor, this chronology suggests that Sgt. Breck was subjected to excessive discipline, a failure to promote, and ultimately constructive discharge in response to her complaints about gender discrimination at the Prince Frederick Barrack and in the MSP disciplinary process. Her retaliation claim may proceed.

Sgt. Breck's allegations are, however, insufficient to sustain a claim for gender discrimination. To state a claim of gender discrimination under Title VII, the plaintiff must allege facts that, taken as true, establish: (1) the plaintiff's membership in the protected class, (2) the plaintiff's satisfactory job performance, (3) that the plaintiff was subjected to an adverse employment action, and (4) that similarly-situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Svcs., Inc.*, 375 F.3d 288, 295 (4th Cir. 2004). The only alleged discriminatory action within the limitations period is the disciplinary decision by the MSP Superintendent in February 2013. Even if the threat that Sgt. Breck would be fired if

11

she did not resign could be deemed an adverse employment action, Sgt. Breck does not provide sufficient facts to support the inference that any unevenness in the discipline meted out to her was a result of a gender-based animus. Instead, the facts Sgt. Breck offers as evidence of gender discrimination involve only the conduct of her colleagues at the Prince Frederick Barrack, who did not make the decision regarding the discipline imposed. Sgt. Breck provides no basis by which to impute the alleged gender-based motivations of the Prince Frederick Barrack staff to the decisionmakers in the disciplinary proceeding and subsequent appeals.

Sgt. Breck's claim of gender discrimination must then be supported solely by the disparity between her punishment and that imposed on Trooper West. However, Sgt. Breck's allegations provide no plausible basis to conclude that she and Trooper West were similarly situated. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008) (stating that, in discrimination cases involving uneven discipline, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful"); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd on other grounds*, 132 S. Ct. 1327 (2012) (affirming the district court's dismissal of a claim of race discrimination based on unequal discipline where the Complaint contained no plausible basis for believing that the plaintiff and his comparator were similarly situated). Instead, her allegations establish that she and Trooper West were in distinctly different situations by virtue of the fact that she was his supervisor. *See Lightner*, 545 F.3d at 265 (finding, where the plaintiff held a higher position than his comparator that required him to "set an example by following the rules himself," that the "difference in positions" made the comparison "too loose" for the plaintiff's claims to establish a genuine issue of material fact on summary judgment). Sgt. Breck therefore

fails to state a claim that she was subjected to uneven discipline as a result of gender discrimination. Her gender discrimination claim will be dismissed.

## CONCLUSION

For the foregoing reasons, MSP's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is granted as to Sgt. Breck's claim for gender discrimination, which is dismissed in its entirety. The Motion is denied as to Sgt. Breck's claim for retaliation, but that claim may proceed only as to alleged acts of retaliation occurring on or after June 23, 2012. A separate order shall issue.

Date: June 5, 2017

THEODORE D. CHUANG
United States District Judge